review the facts which induced the trial court to grant the judgment appealed from. It is sufficient to say that we have carefully examined the record, and are thoroughly satisfied its conclusion is correct. It may be conceded that the letter of June 29, 1901, from the plaintiff to her father-in-law, was improperly admitted in evidence, but it does not follow by reason thereof that the judgment appealed from is erroneous. On the contrary, we think it clearly appears from the whole record that the admission of this letter could not by any possibility have injured the defendant, inasmuch as the result must necessarily have been the same if the letter had been rejected. If we are correct in this conclusion, then the admission of the letter, though improper, did not injure the defendant. Forrest v. Forrest, 25 N. Y. 501; People v. Gonzalez, 35 N. Y. 49; Tenney v. Berger, 93 N. Y. 524, 45 Am. Rep. 263; McGean v. Manhattan Railway Co., 117 N. Y. 219, 22 N. E. 957. The specific acts of cruelty and inhuman treatment testified to by the plaintiff, in which she was corroborated in no small degree by the defendant himself, entitled her to the judgment which she has obtained.

It follows that the judgment appealed from must be affirmed, with costs.

HATCH, INGRAHAM, and LAUGHLIN, JJ., concur.

VAN BRUNT, P. J. (dissenting). I think the judgment should be reversed because of the receipt in evidence of the letter of June 29, 1901, which is admitted to have been error. A more glaring instance of allowing a party to give evidence in her own behalf in the shape of a letter has seldom been seen.

---

(91 App. Div. 63.)

ANDREWS v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. February 5, 1904.)

1. CARRIERS—INJURIES TO PASSENGERS—TIME TO ALIGHT—EVIDENCE.

    Where plaintiff was injured while alighting from a street car, and her testimony that the car had stopped before she attempted to alight, and that she was injured by the premature starting of the car, was uncorroborated, and several disinterested witnesses testified that she attempted to alight before the car had stopped and was thrown down in so doing, a verdict in favor of plaintiff was contrary to the weight of evidence.

    Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Henrietta F. Andrews against the Metropolitan Street Railway Company. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN. O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Charles F. Brown, for appellant.

W. M. K. Olcott, for respondent.

INGRAHAM, J. The plaintiff was injured by falling as she alighted from one of the defendant's cars. The accident happened on the

2d of November, 1899, between 4 and 5 o'clock in the afternoon, just after the car turned from Forty-Second street into Vanderbilt avenue, which adjoins the depot of the New York Central Railroad. The plaintiff testified—and her testimony was entirely uncorroborated—that after the car turned from Forty-Second street into Vanderbilt avenue she heard the conductor ring the bell, and call out, "Harlem Depot;" that the car then stopped near the depot; that she got up to get out; that the door was open, and she stepped out on the platform; looked at the motorman, and he recognized her; he looked at her; that she stepped down, put her foot on the pavement, and the car was immediately started up with a sudden jerk, and threw her headlong down at the time that the jerk came; that her right foot was on the pavement, and she was given a sudden jerk. Upon cross-examination she said that she had not given the conductor any signal to stop; that she said nothing to the motorman as she passed out on the platform, and that he said nothing to her; that there was a man standing right by her on the platform, and the motorman stood at his brake; that she put one foot slowly down upon the step, putting the right foot down upon the ground, the left foot remaining upon the step, and then the car started.

To sustain this action the plaintiff must prove that in some way she had indicated to the employés of the defendant that she wished to alight, or that they had acquired information of that intention. There is no evidence that the car had stopped at the usual place in front of the depot where passengers alight, and the evidence of the defendant is quite conclusive that where the plaintiff fell was some distance south of Forty-Third street, which is not the usual place for cars to stop for passengers who wish to enter the depot. She gave no indication to the conductor that she wished to alight; said nothing to the motorman who was on the platform attending to his duties when she walked out on the front platform of the car; but she says the motorman turned around and looked at her after she came out on the platform. Her whole right to recover, therefore, depends upon the fact that the car had actually stopped, and that the motorman saw her under circumstances which required him to appreciate that she wished to alight, and that, knowing that fact, he started up the car before she had an opportunity to carry out her intention.

For the defendant, the motorman, who between the time of the accident and the time of the trial had left the employ of the defendant, testified that the depot of the Harlem Railroad was on the east side of Vanderbilt avenue, between Forty-Second and Forty-Third streets; that he had charge of the car in question; that the plaintiff on the 2d of November, 1899, came out of the front door of the car, and started to step off the car; that he told her to hold on a minute; that he was then stopping the car; that she stepped off before it stopped and fell down; that the car was in motion when she left it; that the plaintiff did not say anything to him when she came out on the platform; that when he stopped the car he turned and looked, and then saw her going into the depot; that the plaintiff was the first passenger to get off, and a number of passengers got off immediately after her; that the first he saw of the plaintiff while he was braking up the car was

when she started to step off; that he then said, "Wait a minute; hold on," but she stepped off the car; that after he turned into Forty-Second street he commenced to brake the car, because the cars always stop just south of Forty-Third street—that is the rule of the company—and he was stopping, intending to have the car stop where the fender would be on the south crossing of Forty-Third street, but that when he saw the plaintiff step off he stopped the car as quick as he could, so that it stopped about 40 feet south of Forty-Third street; that when she came out of the car he did not think she was going to step off the car. The conductor of the car testified that he had charge of this car at the time of the accident; that from the time the car turned into Vanderbilt avenue until it stopped at Forty-Third street he was on the rear platform; that he received no request or signal from the plaintiff that she desired to alight; that the car stopped about 40 feet below the south side of Forty-Third street; that as soon as the car stopped he gave the motorman two bells to go ahead, because the car had not got to the usual stopping point; that the car did not go ahead, and he then heard somebody call to him that a woman had fallen from the car, and he then got off the car, but the plaintiff had disappeared; that the car came to but one stop after it left Forty-Second street, and before it reached Forty-Third street.

Two passengers upon this car were called as witnesses. One testified that he was standing up in the car near the front door as the car turned out of Forty-Second street and Vanderbilt avenue, about two feet from the front door; that as the car reached a point opposite the Harlem station he saw the plaintiff open the door, and walk out on the platform of the car, and then step off the car where she fell down on the pavement, but the car was in motion when she got off, moving very slow; that he recognized the conductor who had testified as the conductor of the car at the time of the accident; that he did not hear the motorman say anything to the plaintiff. Another passenger testified that he was standing up in the front part of the car; that he saw the plaintiff as she got up and went out of the front door; that when the front door of the car was opened the plaintiff walked out upon the platform and stepped off the car; that the car was in motion when she stepped off, but was moving slowly; that when she stepped off the car was 40 to 50 feet south of Forty-Third street; that he did not hear the motorman say anything, and did not see the motorman turn his head to the right, or look at the plaintiff; that it was all done very quickly—in a couple of seconds; that she did not wait after she started to walk out on the platform, but just stepped right off.

That the plaintiff stepped out upon the platform when she got opposite the Harlem depot, that she thought the car had stopped, and stepped off, is quite evident. All of the other witnesses who were upon the car and testified said positively that the car had not stopped, and that the plaintiff stepped off when the car was in motion.

The plaintiff's physician, who has treated her since the accident, testified that she is in a highly nervous condition; that she has delusions—has a pronounced case of neurasthenia, which was the result of this accident. The condition of the plaintiff, with impaired nerves, as described by her physician and her friends, is to be considered in de-

termining whether her unsupported statement that the car had stopped when she stepped off, contradicted, as it is, by every person who was on the car and called as a witness, is sufficient to base a recovery upon against the defendant.  That she thought the car had stopped, and that she stated to the jury what she believed, may be conceded; but, assuming that she told what she believed, it is much more probable that she is mistaken upon the question as to whether this car was slowly moving when she attempted to alight than that the four witnesses called by the defendant, two of whom certainly have no possible reason to testify falsely, were mistaken.  I think that the finding of the jury that this car had come to a stop before the plaintiff left it and went out upon the platform, and that it started up again as she was leaving the car, or that the motorman had any reason to suppose that she was going to step off the car before it stopped, is not supported by the evidence, and for that reason I think there must be a new trial.

It follows that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to appellant to abide the event.  All concur, except LAUGHLIN, J., who dissents.